UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| KAREN I. FELD,<br><br>          *Plaintiff,*<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>          *Defendant*. | Civil No. 1:23-cv-840-MSN-JFA |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant's Partial Motion to Dismiss (Dkt. 8). Plaintiff Karen Feld brought a Federal Tort Claims Act ("FTCA") suit against the government arising out of a security screening by a Transportation Security Administration ("TSA") officer at Ronald Reagan Washington National Airport. Plaintiff brought two claims: battery and intentional infliction of emotional distress ("IIED"). The government moved to dismiss the IIED claim. Because Feld's allegations plausibly state an IIED claim, however, the Court will deny the motion.

## I.     BACKGROUND[1]

On September 10, 2021, Feld traveled from Ronald Reagan Washington National Airport in Arlington, Virginia, to a residence Portland, Maine. Compl. ¶¶ 7-8. Feld used a wheelchair to proceed to the TSA security checkpoint, accompanied by two leashed service dogs. *Id.* ¶ 9. Although her boarding pass was valid and contained the TSA PreCheck indicator, a TSA officer informed her that she was not allowed in the PreCheck line because of her dogs. *Id.* ¶¶ 17-19. The officer directed Feld to the standard security lane. *Id.* ¶ 24.

---

[1] The Court assumes the truth of Plaintiff's factual allegations and draws all reasonable factual inferences in Plaintiff's favor for purposes of this motion. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002).

TSA officers denied Feld a PreCheck on-person screening, despite the agency's policy that travelers with PreCheck are not required to remove shoes, belts, 3-1-1 compliant bags, light outerwear, or laptops from their bags, even when in the standard security lane. *Id.* ¶¶ 23-24. The TSA officer required Feld to remove her shoes and to remove her iPad from her bag, which the officer spent "a long time going through … out of Feld's sight." *Id.* ¶ 25. The TSA officer directed Feld to walk through a body scanner, and she complied. *Id.* ¶ 28.

Although Feld did not have any unauthorized items, the TSA officer grabbed Feld without warning or Feld's consent. *Id.* In the two days preceding her travel, Feld had obtained medical treatment, which included "a cancer biopsy of her chest/throat area." *Id.* ¶ 7. She had a bandage over the area that had been biopsied and was instructed by her physician to keep the area covered for several days. *Id.* The TSA officer "forcibly rip[ped] the bandage off of Feld" and "was laughing the entire time." *Id.* ¶ 28. This caused Feld's biopsy site to reopen and bleed. *Id.* ¶ 29. The officer then, again without warning or Feld's consent, roughly grabbed her breast and ribs, while "laughing the entire time." *Id.* ¶ 33. These actions caused Feld excruciating pain and served no security purpose. *Id.* ¶¶ 34-35.

The TSA officer proceeded to conduct a pat-down search of Feld. Feld advised the TSA officer that she suffered from shingles on her left side and that she was highly allergic to latex, requesting that the TSA officer use a different type of glove. *Id.* ¶ 38. The TSA officer refused to remove her latex gloves or use different gloves, stating "if you fly, this is what you get." *Id.* ¶ 39. The search was unnecessarily rough and caused Feld extreme pain. *Id.* ¶¶ 39-40.

Feld is in her mid-seventies. *Id.* ¶ 6. At the time of the incident, she was about five feet tall and weighed approximately 95 pounds. *Id.* She alleges that the TSA officer's actions were intended to "humiliate, control, and dominate Feld." *Id.* ¶¶ 32, 37, 42. As a result of the TSA officer's actions, Feld went to the emergency room three days later, where she was diagnosed with chest

wall bruising, mild swelling at the right posterior axillary line, and focal tenderness in the area. *Id.* ¶ 44. She was later diagnosed with a dislocated or floating rib, which has affected her breathing. *Id.* ¶ 45. Feld was also diagnosed with Post-Traumatic Stress Disorder after the incident and has avoided commercial air travel whenever possible. *Id.* ¶ 46.

## II.    ANALYSIS

The government moves to dismiss Plaintiff's IIED claim, in which she alleges that the TSA officer's intentional or reckless actions caused her severe emotional distress, for failure to state a claim. To survive a Rule 12(b)(6) motion, Plaintiff must allege facts that are sufficient "to state a claim to relief that is plausible on its face" and "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Conclusory statements, however, are insufficient to state a claim for relief. *See Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012).

Under Virginia law, there is a high bar for Plaintiff to plead an IIED claim.[2] Plaintiff must allege that "1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe." *Ogunde v. Prison Health Servs., Inc.*, 274 Va. 55, 65 (2007). The government argues that Plaintiff has not alleged conduct that is either outrageous or intolerable, and even if she did, her allegations regarding a causal connection between the incident and her emotional distress and the severity of her emotional distress are too conclusory to state a claim.

Feld has alleged conduct that was "outrageous or intolerable." *Id.* Whether the alleged conduct is outrageous "is a question of law" (*Daniczek v. Spencer*, 156 F. Supp. 3d 739, 758 (E.D.

---

[2] Federal courts apply the law of the state in which the alleged incident occurred in FTCA suits. *Kerns v. United States*, 585 F.3d 187, 194 (4th Cir. 2009).

Va. 2016)) that is satisfied when the conduct "go[es] beyond all possible bounds of decency" and is "utterly intolerable in a civilized community" (*Russo v. White*, 241 Va. 23, 27 (1991)). Feld alleges that, despite her full compliance with the security procedures, the TSA officer grabbed her without warning or consent (Compl. ¶ 28); "forcibly rip[ped] [a] bandage" off Feld's chest, which caused her biopsy site to bleed (*id.* ¶¶ 28-29); "roughly grabbed [her] breast and ribs" (*id.* ¶ 33); and conducted a pat-down search with latex gloves, even after Feld informed the officer of a latex allergy (*id.* ¶ 38)—all while "laughing the entire time" (*id.* ¶¶ 28, 33). If all proven to be true, the combination of these allegations, especially in light of Feld's age and disability and under circumstances where Feld has alleged the TSA officer "abuse[d] [her] position of authority" by conducting such an invasive screening, are sufficiently "beyond all possible bounds of decency." *Daniczek*, 156 F. Supp. 3d at 760-61 (E.D. Va. 2016) (citation omitted).

Feld's allegations, moreover, sufficiently establish a causal connection between her TSA screening and her severe emotional distress. Feld alleges she was diagnosed with Post-Traumatic Stress Disorder "[a]s a direct result of" the incident and has avoided commercial air travel whenever possible, resulting in her cancelling or declining many trips that require commercial air travel. Compl. ¶¶ 46, 47, 66. These allegations are sufficient to state an IIED claim.

\*       \*       \*

Accordingly, it is hereby

**ORDERED** that Defendant's Partial Motion to Dismiss (Dkt. 8) is **DENIED**.

It is **SO ORDERED**.


_____
                              /s/
Hon. Michael S. Nachmanoff
February 5, 2024          United States District Judge
Alexandria, Virginia

4